# Third District Court of Appeal

**State of Florida**

Opinion filed June 6, 2018.

Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2213

Lower Tribunal No. 13-21908

_____

**Gilberto Alfonso, et al.,**

Appellants,

vs.

**State of Florida ex rel. Florida Public Employees Counsel 79,
AFSCME, AFL-CIO, et al.,**

Appellees.


An appeal from the Circuit Court for Miami-Dade County, Bronwyn C. Miller, Judge.

Feiler & Leach, P.L. and Martin E. Leach, for appellants.

Stacy Wein; Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and William R. Radford, for appellees.

Before SUAREZ, LAGOA, and SCALES, JJ.

SUAREZ, J.

The Appellants[1] seek to reverse an order denying their motions to intervene

in the lawsuit between the City of Hialeah [the "City"] and the AFL-CIO Union

_____

[1] The Appellants are former civil service employees of the City. They are not parties to the underlying litigation between the Union, the PERC, and the City.

["Union"]. We affirm, as the intervention requested would have impermissibly interjected new issues into this already protracted litigation.

In 2009, the City and the Union began negotiating a new Collective Bargaining Agreement ["CBA"] to succeed their existing CBA set to expire on September 30, 2009. The City was in the midst of an economic crisis and expected a serious budgetary shortfall during the fiscal year 2009-2010. As a result, it sought concessions from the Union. The Union resisted. After several unsuccessful negotiating sessions with the Union, the City declared an impasse in December 2009 and, as required, notified the Florida Public Employees Relations Commission ["PERC"] of the impasse. The parties continued to engage in negotiations unsuccessfully.

In May, 2010, a special magistrate selected by the parties, Thomas Terrill, conducted an impasse hearing pursuant to the Public Employees Relations Act. Special Magistrate Terrill concluded that the City proved by clear and convincing evidence that the City was suffering a severe budgetary shortfall and recommended the City be awarded economic concessions. Special Magistrate Terrill released his Recommended Decision on June 18, 2010. On July 13, 2010, without waiting for the impasse proceedings to conclude, the City implemented an impasse resolution that resulted in an approximately 30% cut to its employees' wages, in addition to a sharp increase in the City-provided health insurance plan costs, among other things. The record indicates that the

2

City engaged in the reduction in wages and benefits from July 13, 2010 through March 4, 2011. It is important to note that during that time period, the Appellants were active City employees and Union members directly affected by the City's actions. The Union interpreted the City's actions to be in violation of section 447.403, Florida Statutes (2010), and to be a violation of the Union's right to collectively bargain on its members' behalf. As a result, the Union filed an unfair labor practice claim with the PERC against the City for violation of section 447.501(1)(a) and (c) and alleged the City unilaterally altered the terms and conditions of the bargaining unit's members before the impasse procedures were completed.

The PERC agreed with the Union, and on March 4, 2011, entered a Final Order incorporating Special Magistrate Terrill's Recommended Decision and found that the City engaged in an unfair labor practice in violation of sections 447.501(1)(a) and (c), and ordered the City to do the following:

- Rescind the Impasse Resolution action taken by the City Council on July 13, 2010;
- Conduct a legislative body hearing in a manner consistent with the requirements of Section 447.403, Florida Statutes;
- Post immediately for sixty days in conspicuous locations where notices to bargaining unit employees are customarily posted, copies of the notice to employees which states that the City will cease the conduct set forth in paragraph one above and will take affirmative action set forth in paragraph two; and
- Pay the Union its reasonable attorney's fees and costs of litigation.

The City appealed the PERC's order and this Court affirmed. City of Hialeah v. Florida Pub. Emp's Council 79, Am. Fed'n of State, Cty. and Mun. Emp's, AFL-CIO, 86 So. 3d 1128 (Fla. 3d DCA 2012).

In June 2013, the Union filed a petition in the circuit court to enforce the PERC's March 4, 2011 Final Order, inasmuch as the City had failed to reimburse its employees for lost wages during the period from July 13, 2010 through March 4, 2011, the period for which the City was found to have engaged in the unfair labor practice. In 2014, between the time of the City filing its Answer to the Union's circuit court petition, and the trial court's July 2015 grant of partial summary judgment on liability in the Union's favor, the record indicates these Appellants, non-parties to the Petition, retired from City employment.

In August 2015, at the joint request of the Union and the City, the trial court withheld entry of a final order to allow the parties to negotiate a settlement. From December 2015 through June 22, 2016, the trial court granted five extensions of time to allow for ongoing negotiations. At some point during the extended negotiation period, the City and Union agreed that only those City employees who were active employees as of July 20, 2015 would receive compensation. Thus, the Appellants were excluded from the settlement. Upon learning this, on July 25, 2016, the Appellants filed their first motions to intervene.[2]

_____

[2] The Appellants moved to intervene because the statute of limitation for bringing individual claims to the PERC had expired. See Amato v. City of Miami Beach, 208 So. 3d 235, 238 (Fla. 3d DCA 2016) (noting the jurisdictional statute of

4

While the Appellants' motions to intervene were pending before the trial court, the City and the Union filed their joint motion for court approval of the Settlement Agreement. On August 29, 2016, before the Appellants' motions to intervene were heard, the trial court dismissed the case with prejudice pursuant to the Settlement. On September 1, 2016, the Appellants filed a motion to vacate the dismissal, contending that their motions to intervene precluded ratification of the Settlement. The Appellants further alleged that as former City employees and Union members they expected the same benefits as active employees under the proposed settlement agreement, and would not have any remedy were they to be excluded.

At the conclusion of the September 12, 2016 hearing on Appellants' motions to intervene, the trial court applied the intervention analysis set forth in Morgareidge v. Howey, 78 So. 14 (Fla. 1918), and concluded that 1) the intervention motions were untimely filed and if granted would necessarily result in protracted litigation; 2) as the Appellants seek to individually object to the Settlement Agreement, the court has no jurisdiction to consider individual attacks on the collective bargaining procedures or to order payment of accrued wages; 3)

---

limitation to file a PERC complaint under section 447.503(6) (b) is six months). Once the Appellants retired in 2014 during the pendency of the enforcement action, their interests in the enforcement action necessarily became individual claims, as they were no longer directly represented by the Union in that action. They would have had standing at that point to bring their own individual enforcement claims against the City via the PERC, but failed to do so within the applicable limitation period.

5

the Appellants failed to show that the Union acted unreasonably in negotiating the underlying dispute, given the City's insurmountable financial crisis, and that in balancing interests, the Union reasonably excised non-active workers from reimbursement because those ex-employees were not subject to furlough and layoff; 4) the Appellants did not identify or exhaust any internal Union administrative remedies. Finally, the trial court noted that Appellants' rights are subordinate to the rights of the parties – the Union and the City. Thus, to permit the Appellants to intervene post-Final Judgment would prejudice the parties by jeopardizing six years of difficult settlement negotiations. The trial court denied the Appellants' motions to intervene and motion to vacate the dismissal. This appeal ensued.

The record indicates the Appellants retired during the pendency of the Union's enforcement action. At that separation, the Union was no longer required to represent their interest in the negotiations. See e.g. Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div., 404 U.S. 157, 92 S. Ct. 383, 30 L.Ed.2d 341 (1971) (holding that employers are under no obligation to bargain with unions over benefits for already retired workers, and the union has no duty to represent retirees with the employer, although it may choose to do so). Upon retirement, the Appellants' rights and remedies became subordinate to those of the active Union members.

6

The petition filed by the Union in the circuit court was filed solely to enforce the PERC Order entered March 4, 2011. We conclude the trial court did not abuse its discretion when it denied the motions to intervene because the Appellants' rationale for intervention, to challenge the Union's decision to excise retired employees from the Settlement Agreement, is a different matter than the enforcement of the PERC order, which was the only issue before the trial court, and would necessarily force a re-opening of the lengthy negotiations and painful concessions made by both the Union and the City. More to the point, the trial court's jurisdiction does not extend in these circumstances to anything other than enforcement of the PERC's order, or to dismiss the action once the parties reached an agreement. The trial court noted that the Appellants' objections to the Settlement Agreement are essentially new claims against the Union. Inasmuch as the Appellants claim the actions of the Union to exclude them from the Settlement Agreement were arbitrary, discriminatory, or taken in bad faith, they are proposing new individual claims against the Union; those claims are entirely separate from the Union's enforcement action against the City and would impermissibly interject these new issues into the litigation. See Nat'l Wildlife Fed'n, Inc. v. Glisson, 531 So. 2d 996, 998 (Fla. 1st DCA 1988) (stating that the intervenor must accept the record and pleadings as they exist in the litigation and the intervenor may not raise any new issues).

7

We conclude that the trial court's substantive analysis pursuant to Morgareidge and progeny supports affirmance.[3]  Because that analysis is dispositive, we do not reach the remaining issues on appeal.

Affirmed.

---

[3] In addition to determining the interest is appropriate for intervention, the trial court must exercise its sound discretion to determine whether to permit intervention. Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505 (Fla. 1992). These considerations include "the derivation of the interest, any pertinent contractual language, the size of the interest, the potential for conflicts or new issues, and any other relevant circumstances." Id. at 507-08.